IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE GARMON CORPORATION, and<br>MAXIM ZENWISE OPCO, LLC,<br><br>    Plaintiffs,<br><br>    vs.<br><br>VETNIQUE LABS, LLC,<br><br>    Defendant. | Case No. 19 C 8251 |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

    This case involves a patent relating to a pet nutritional supplement. The Garmon Corporation and Maxim Zenwise Opco, LLC (Zenwise) sued the patentee, Vetnique Labs, LLC. The plaintiffs seek a declaratory judgment that the patent is invalid or, if it is valid, a declaration that they have not infringed it or induced infringement of it. In addition, they assert claims seeking damages and injunctive relief under the Sherman Antitrust Act, 15 U.S.C. § 2, and the Lanham Act, 15 U.S.C.A. § 1125(a)(1). Vetnique has moved to dismiss the plaintiffs' Sherman Act and Lanham Act claims. For the reasons stated below, the Court denies Vetnique's motion to dismiss.

### Background

    At this stage, the Court accepts as true the facts alleged in the amended complaint. *O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 342 (7th Cir. 2018). The plaintiffs make nutritional supplements for pets and sell them on Amazon's website. Vetnique sells nutritional supplements for pets on Amazon's website as well. In April

2019, Vetnique obtained a patent, U.S. Pat. No. 10,245,293, relating to the treatment and prevention of anal gland disease in pets. Specifically, the patent covers the composition of a nutritional supplement to prevent this disease.

At some point after obtaining the patent, Vetnique submitted a complaint to Amazon alleging that certain products sold by the plaintiffs via Amazon infringed the patent. Either by sending the claim or by taking additional actions, Vetnique initiated proceedings as part of an Amazon-administered program in which patentees can obtain evaluations of their infringement claims against parties that sell products on Amazon's website. At the time, the plaintiffs have alleged, Vetnique knew that the patent was invalid and/or that the plaintiffs' products did not infringe it.

Subsequently, in June 2019, Vetnique sent a letter to Garmon, alleging, among other things, that two of its products infringed the patent. On the same day, Vetnique sent a similar letter to Zenwise, alleging that one of its products infringed the patent. In both letters, Vetnique indicated that it previously had filed a complaint regarding the alleged infringement through Amazon's patent evaluation program. Vetnique also stated in both letters that it would "not relent in taking further action" to address the alleged infringement and that it "reserve[d] the right to assert further claims of infringement through litigation in addition to that asserted through the Amazon program." Am. Compl., Ex. B. at 1; *id.*, Ex. C at 1. Vetnique demanded, among other things, that Garmon and Zenwise immediately cease and desist from making, using, and selling the allegedly infringing products and pay damages to Vetnique for infringement.

The complaint does not state that Zenwise participated in Amazon's patent

evaluation program by submitting evidence or taking other actions, and Vetnique contends that Zenwise did not participate in the program. Regardless, as a result of Vetnique's complaint, Amazon has, since June 13, 2019, prevented Zenwise from listing and selling its allegedly infringing product on Amazon's website.

Garmon participated in Amazon's patent evaluation program. The defendants have submitted an agreement signed by Vetnique's CEO and president and Garmon's counsel, which stated, "Participants waive any claim against other Participants, Amazon, or Evaluator arising out of the Evaluation, including claims that are unknown or based on activities that have not yet occurred." Def.'s Mem., Ex. E ¶ 3. The agreement also states, "Nothing in this Agreement shall limit a Participant's ability to sue any Seller or other third party for infringement of the Patent." *Id.* Through the program, Garmon submitted evidence to Amazon in support of its contention that the patent is invalid. As a result of Amazon's evaluation, it has, since August, barred Garmon from listing and selling its allegedly infringing products on Amazon's website.

In October 2019, Zenwise began listing a reformulated version of its allegedly infringing product for sale through Amazon. The complaint says nothing about whether Vetnique's patent covers the reformulated product. Later that month, Vetnique submitted a complaint to Amazon about the reformulated product. This resulted in Amazon removing the product from its listings.

Sometime before or during November 2019, Garmon informed Vetnique that it intended to list a reformulated version of one of its allegedly infringing products for sale on Amazon, and it disclosed the product's ingredients to Vetnique. The reformulated product does not contain any ingredient identified in a closed group of anti-inflammatory

3

agents listed in the patent's claims; the complaint says nothing about whether or not the product infringes the patent in other ways. In November 2019, Garmon began listing the reformulated product for sale on Amazon. Later that month, Vetnique submitted a complaint to Amazon that resulted in Amazon removing the reformulated product from its listings.

In December 2019, the plaintiffs filed this lawsuit. In Count 1 of their amended complaint, they seek a declaratory judgment that Vetnique's patent is invalid. In Count 2, they seek a declaratory judgment of noninfringement and no induced infringement. In Count 3, they allege that Vetnique monopolized the nutritional supplement market for pets' anal gland disease in violation of the Sherman Act, 15 U.S.C. § 2, and in Count 4, they allege that Vetnique violated section 43(a) of the Lanham Act, 15 U.S.C.A. § 1125(a)(1).

Vetnique has asserted counterclaims and, in the present motion has moved to dismiss counts 3 and 4 of the plaintiffs' amended complaint. As the Court explains in more detail momentarily, in seeking dismissal, Vetnique contends it is it is immune from antitrust liability under the so-called *Noerr-Pennington* doctrine. *See United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 664–69 (1965) (*Pennington*); *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 135–40 (1961) (*Noerr*). In its original memorandum in support of its motion for summary judgment, Vetnique did not, however, address whether the *Noerr-Pennington* doctrine applied in the first place. On June 4, 2020, the Court issued an order directing the parties to brief "whether and why the *Noerr-Pennington* doctrine applies to *each* of the alleged anti-competitive actions." Dkt. no. 41. The parties have now done so.

4

**Discussion**

To survive a motion to dismiss under Rule 12(b)(6), plaintiffs must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering such a motion, a court "accept[s] well-pleaded facts as true and draw[s] all reasonable inferences in the plaintiffs' favor." *Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1060–61 (7th Cir. 2020). "A claim has facial plausibility when the plaintiff[s] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Vetnique seeks to dismiss counts 3 and 4 on three grounds. It contends that it is immune from liability for the plaintiffs' antitrust claim, that the plaintiffs have failed to allege an unfair competition claim under the Lanham Act, and that Garmon waived its right to pursue either of those claims when it entered into an agreement with Vetnique to participate in Amazon's patent evaluation program. The Court addresses each contention into turn.

**A.   Antitrust claim**

In count 3, the plaintiffs allege that Vetnique has violated antitrust law by preventing the sale of their products through Amazon. Specifically, they allege that Vetnique stifled competition by initiating the evaluation of the parties' patent dispute through the Amazon program, which led to the removal of the plaintiffs' products from Amazon's website; filing complaints with Amazon after the plaintiffs listed reformulated versions of their products, which led to the removal of those products from Amazon's website; and sending letters demanding that the plaintiffs cease and desist making their

5

allegedly infringing products.

As an initial matter, in their response brief, the plaintiffs contend that Vetnique's "bad faith enforcement actions" include its filing of its infringement counterclaim in this case. Pls.' Mem. at 7–8. This contention makes no sense in a response to a motion to dismiss. The plaintiffs cannot contend that they have adequately alleged a fact in their amended complaint—Vetnique's assertion of a counterclaim—that did not exist at the time they filed the amended complaint. Indeed, the amended complaint includes no allegations pertaining to Vetnique's filing of its counterclaim. Accordingly, the Court disregards the parties' arguments regarding whether the plaintiffs have adequately stated an antitrust claim concerning Vetnique's filing of its counterclaim.

With regard to the other alleged antitrust violations, Vetnique contends that it is immune from liability under the so-called *Noerr-Pennington* doctrine. *Pennington*, 381 U.S. at 669; *Noerr*, 365 U.S. at 136–38. The parties dispute whether the *Noerr-Pennington* doctrine applies to the plaintiffs' allegations concerning the removal of their products by Amazon as a result of the patent evaluation in Amazon's program and Vetnique's filing of complaints with Amazon. The question of whether a patentee's conduct in procuring or enforcing a patent is immune from antitrust law is governed by Federal Circuit law. *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed. Cir. 1998).

Under the *Noerr-Pennington* doctrine, parties "who petition [the] government for redress are generally immune from antitrust liability." *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993) (*PRE*). Such immunity extends to parties who initiate proceedings before courts and administrative agencies. *Id.* at 57.

It does not, however, apply where a restraint on trade "has resulted from private action." *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499 (1988) (private association that imposed anticompetitive restraints through its standard-setting process was not entitled to *Noerr-Pennington* immunity); *see also Ford Motor Co. v. Nat'l Indem. Co.*, 972 F. Supp. 2d 862, 867–69 (E.D. Va. 2013) (collecting cases where courts have found that the *Noerr-Pennington* doctrine does not provide immunity to parties who engage in anticompetitive behavior pertaining to private arbitrations).

In its supplemental brief, Vetnique contends that the *Noerr-Pennington* doctrine gives it immunity from the antitrust allegations concerning its dealings with Amazon because the doctrine applies to an enforcement of a patent through litigation and the sending of cease-and-desist letters. Vetnique does not attempt to explain how Amazon's patent evaluation program or the infringement complaints it submitted to Amazon might be considered litigation and/or cease-and-desist letters. Instead, without citing to authority, it contends that how one categorizes Amazon's patent evaluation program "is immaterial," and it appears to suggest that the *Noerr-Pennington* doctrine applies to the communication or assertion of patent rights more broadly. Def.'s Supp. Mem. at 6.

The Court is not persuaded that the *Noerr-Pennington* doctrine provides Vetnique with immunity from the plaintiffs' antitrust claims concerning its participation in Amazon's patent evaluation program or its filing of complaints with Amazon. This is because the relevant allegations concern restraints on trade—the removal of the plaintiffs' products from Amazon's website—that "resulted from private action." *Allied Tube & Conduit Corp.*, 486 U.S. at 499. In deciding whether the *Noerr-Pennington*

doctrine applies to a particular claim, courts do not consider the type of right a party asserted in taking an anticompetitive action, as Vetnique appears to suggest, but rather the "source, context, and nature of the anticompetitive restraint at issue." *Id.* Where, as here, the anticompetitive restraint was imposed by a company "unaccountable to the public and without official authority" that might "have personal financial interests in restraining competition," the *Noerr-Pennington* doctrine does not provide immunity. *Id.* Accordingly, the Court concludes that the *Noerr-Pennington* doctrine does not apply to the plaintiffs' allegations concerning the removal of the products from Amazon, and it denies Vetnique's motion to dismiss those allegations.

The parties do not dispute that the *Noerr-Pennington* doctrine applies to the plaintiffs' antitrust allegation concerning Vetnique's mailing of cease-and-desist letters.[1] They dispute, however, whether a recognized exception to the *Noerr-Pennington* doctrine renders those allegations subject to suit. Under the exception, *Noerr-Pennington* immunity does not apply to "sham" activity—activity that, though "ostensibly directed toward influencing governmental action . . . is a mere sham to cover an attempt to interfere directly with the business relationships of a competitor." *PRE*, 508 U.S. at 56 (internal quotation marks and alteration omitted).

Vetnique contends that the "sham" exception applies only in litigation contexts, not to the sending of a cease-and-desist letter. One way or the other, however, that

---

[1] In its reply and supplemental briefs, Vetnique contends that the plaintiffs have failed to state a claim concerning its sending cease-and-desist letters because the plaintiffs have not alleged that those letters caused them an antitrust injury. The Court declines to address the merits of this contention, however, because "[p]arties waive arguments which they develop for the first time in a reply brief." *Campos v. Cook County*, 932 F.3d 972, 976 n.2 (7th Cir. 2019).

8

contention misses the mark. In *PRE*, the Supreme Court defined the sham exception to the *Noerr-Pennington* doctrine "as that doctrine applies in the litigation context." *Id.* at 51. But courts have found that the exception applies in other contexts as well. *See e.g.*, *Tyco Healthcare Grp. LP v. Mut. Pharm. Co.*, 762 F.3d 1338, 1347 (Fed. Cir. 2014) (administrative petitions); *Toyo Tire & Rubber Co. v. Atturo Tire Corp.*, No. 14 C 0206, 2017 WL 1178224, at *6 (N.D. Ill. Mar. 30, 2017) (action before the U.S. International Trade Commission). This Court agrees.

Vetnique also contends that the actions it took in sending the cease-and-desist letter were not shams. In *PRE*, the Supreme Court found that, to qualify as a "sham," a "lawsuit must be objectively baseless "in the sense that no reasonable litigant could realistically expect success on the merits." *PRE*, 508 U.S. at 60. In addition, the lawsuit must "conceal[] an attempt to interfere directly with the business relationships of a competitor though the use of the governmental process . . . as an anticompetitive weapon." *Id.* at 60–61 (internal quotation marks, citations, and emphases omitted). "In other words, the plaintiff must have brought baseless claims in an attempt to thwart competition (i.e., in bad faith)." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 556 (2014). The Federal Circuit has applied this standard to actions other than litigation. *Tyco Healthcare Grp.*, 762 F.3d at 1347 ("*PRE*'s two-part test . . . is not limited to court litigation.").

The plaintiffs have adequately alleged that Vetnique's act of sending of the cease-and-desist letters was objectively baseless and concealed an attempt to interfere directly with the plaintiffs' business. Specifically, the plaintiffs allege that in the cease-and-desist letters, Vetnique threatened them with a patent lawsuit and requested

9

damages even though it knew the patent it was seeking to enforce was invalid. Taking this allegation as true, the plaintiffs have sufficiently alleged that Vetnique's threats were baseless; no reasonable litigant could expect to succeed in a lawsuit to enforce an invalid patent. And they allege that Vetnique attempted to use the letters to thwart competition, as they allege that Vetnique tried to get them—its competitors—to stop selling their products.

Vetnique contends that its successful enforcement of the patent through Amazon's program shows that its act of sending cease-and-desist letters was not a sham. To be sure, "[a] winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham." *PRE*, 508 U.S. at 60 n.5. But, as explained earlier in this opinion, a proceeding through Amazon's patent enforcement program is not a lawsuit; it is a proceeding before a private entity that may be influenced by other interests, pressures, or biases. Thus, at the motion to dismiss stage, where the Court must construe the facts in favor of the plaintiffs, the Court cannot appropriately conclude that the outcome of the Amazon proceeding definitively establishes that Vetnique's motives in initiating it were not "objectively meritless." *See id.* at 60

For these reasons, the Court declines to dismiss the plaintiffs' antitrust claims on the basis of the *Noerr-Pennington* doctrine. Later in this opinion, the Court will discuss Vetnique's contention that dismissal of the antitrust claim against Garmon is required because Garmon contractually waived the claim.

**B.     Unfair competition claim**

In Count 4, the plaintiffs allege that Vetnique's assertion to Amazon that their products infringe the patent, when Vetnique knew the products were on sale before the

10

effective filing date of each claim of the patent and after Vetnique received evidence showing the invalidity of the patent, constituted unfair competition in violation of section 43(a) of the Lanham Act. Section 43(a), in relevant part, provides:

> Any person who, on or in connection with any goods or services, . . . uses in commerce . . . any false or misleading description of fact, or false or misleading representation of fact, which—
>
> > . . . (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C.A. § 1125(a)(1). Federal Circuit law applies to Lanham Act claims concerning a patentee's marketplace statements. *See Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp.*, 459 F.3d 1311, 1321 (Fed. Cir. 2006).

In the memorandum in support of its motion to dismiss, Vetnique contends that section 43(a) protects against conduct concerning trademark infringement and false advertising, not alleged false representations of patent infringement. This is incorrect. Section 43(a) claims can be "based on alleged marketplace statements," including statements to potential customers that a product infringes a patent. *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1349 (Fed. Cir. 1999). Indeed, Vetnique appears to concede this in its reply brief, where it acknowledges that "allegations of unfair competition" can "relate to patent enforcement efforts." Def.'s Reply Mem. at 8.

To state a claim for unfair competition under section 43(a), the plaintiffs must allege that (1) Vetnique "made a false or misleading statement of fact in commercial advertising or promotion about" the plaintiffs' products; (2) "the statement actually deceives or is likely to deceive a substantial segment of the intended audience"; (3) "the

11

deception is material in that it is likely to influence purchasing decisions"; (4) that Vetnique "caused the statement to enter interstate commerce"; and (5) "the statement results in actual or probable injury" to the plaintiffs. *Zenith Elecs.*, 182 F.3d at 1348. In addition, because this claim involves "marketplace activity" by a patentee in "support of its patent," the plaintiffs must allege that Vetnique made the statements to Amazon in "bad faith." *Id.* at 1353 ("This prerequisite is a function of the interaction between the Lanham Act and patent law, and is in addition to the elements required by § 43(a) itself, as § 43(a) alone does not require bad faith.").

Vetnique contends the plaintiffs have not alleged that it acted in bad faith in telling Amazon that the plaintiffs were infringing the patent. But, "[o]bviously, if the patentee knows that the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith representations is made out." *Id.* at 1354. The plaintiffs here have alleged that Vetnique represented to Amazon that they were infringing its patent despite knowing that the patent was invalid or that the at-issue products did not infringe it. Thus they have adequately asserted that Vetnique made these statements in bad faith.

Vetnique also contends that the plaintiffs have not made "any allegations of customer confusion." Def.'s Mem. at 6. If Vetnique is contending that this is required to state a claim under section 43(a), it has offered no case law in support of this point, and the Court could find none. Rather, as indicated, the plaintiffs must allege that Vetnique's statement "actually deceives or is likely to deceive a substantial segment of the intended audience." *Zenith Elecs.*, 182 F.3d at 1353. The plaintiffs have done this. Specifically, they allege that Vetnique falsely told Amazon—its intended audience—that

12

the plaintiffs had infringed that patent and that Amazon was deceived by that statement and removed the plaintiffs' products from its website as a result. This is sufficient to state a claim of unfair competition.

For these reasons, the Court declines to dismiss the plaintiff's unfair competition claim for failure to state a claim. The Court discusses next Vetnique's contention that the claim must be dismissed because Garmon contractually waived it.

**C.      Contractual waiver**

Vetnique contends that Garmon waived its right to bring counts 3 and 4 when it entered into an agreement with Vetnique to adjudicate their patent dispute in Amazon's patent evaluation program. In support, Vetnique has submitted an agreement signed by the Vetnique's CEO and president and Garmon's counsel that, as indicated, states, "Participants waive any claim against other Participants, Amazon, or Evaluator arising out of the Evaluation, including claims that are unknown or based on activities that have not yet occurred." Def.'s Mem., Ex. E ¶ 3. The agreement also states, "Nothing in this Agreement shall limit a Participant's ability to sue any Seller or other third party for infringement of the Patent." *Id.*

Though neither party addresses it, the Court notes that that there is a question regarding whether it may consider the agreement at this stage in the proceedings. In the complaint, the plaintiffs referred to Amazon's patent evaluation program but not to the parties' agreement to participate in it. In ruling on a motion to dismiss, a court may consider "documents attached to a motion to dismiss . . . if they are referred to in the [plaintiffs'] complaint and are central to [their] claim." *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018). This is a "liberal" rule, however, particularly where

13

the plaintiffs do not "contest the validity or authenticity of the extraneous materials." *Id.* Because that is the case here, the Court considers the agreement.

Garmon contends that it did not waive its antitrust and unfair competition claims because it waived only claims that arise out of the Amazon patent evaluation program, and those claims do not arise out of it. But at least some of the allegations underlying the antitrust and unfair competition claims *do* arise out of the evaluation program, including the allegations that Vetnique committed an antitrust violation in part by enforcing its patent rights through Amazon's program and that Vetnique falsely asserted to Amazon during the program's proceedings that Garmon had infringed its patent.

Garmon contends, however, that the parties' agreement is unenforceable on public policy grounds because it "purports to prospectively waive liability for future violations of the antitrust laws." Pls.' Resp. Br. at 13. Citing *Minigrip Inc. v. Recpro Co.*, 168 F.3d 1322 (Fed. Cir. 1998), Vetnique replies that the antitrust and unfair competition claims are not based on future violations but rather on past conduct.[2] In *Minigrip*, the Federal Circuit found that a waiver in a settlement agreement that "was executed after the accrual" of a party's antitrust claims "operated as a retrospective" waiver and thus was not against public policy. *See id.*

The Court is not prepared to say, as a matter of law on a motion to dismiss, that Garmon waived its right to bring its antitrust and federal unfair competition claims. For one, this case is distinguishable from *Minigrip* because, viewing the facts in Garmon's

---

[2] The case Vetnique cites in its opening memorandum in support of this contention is inapposite because it involved a defendant that contended a party waived and released certain state-law claims, and the court dismissed the case on other grounds without addressing that contention. *Romo v. Fed. Nat'l Mortg. Ass'n*, No. 14 C 10508, 2015 WL 10734721, at *1, *3 (N.D. Ill. Aug. 10, 2015).

14

favor as required, key allegations underlying Vetnique's antitrust and unfair competition claims occurred *after* the parties signed the agreement. For example, the plaintiffs allege that the harm from Vetnique's anticompetitive and unfairly competitive conduct occurred, at least in part, when Amazon removed Garmon's products from its website after the patent evaluation proceedings. Moreover, the Court cannot decide on the basis of the complaint alone whether a waiver of the plaintiffs' claims would be contrary to public policy. This is, at least in part, because the Court cannot decide at this stage whether Amazon's patent evaluation program is an adequate forum to "assure the effective vindication" of the plaintiffs' federal statutory claims in the first place. *See Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013) (discussing exception to federal principle in favor of arbitration that allows courts to invalidate arbitration agreements that prevented the effective vindication of a federal statutory right). Doing so would require the Court to look at evidence outside of the pleadings, which the Court cannot appropriately do at this stage.

## Conclusion

For the foregoing reasons, the Court denies Vetnique's partial motion to dismiss [dkt. no. 24] and directs Vetnique to answer counts 3 and 4 within 21 days of this order.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: June 22, 2020